## IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: VAN E. CHRISTIAN, II | ) |
| | ) CASE NO. 10-09108 |
| JOHN AND CONNIE MCCASLIN, | ) |
|     *Plaintiffs*, | ) CHAPTER 7 |
| v. | ) |
| VAN E. CHRISTIAN, II, | ) JUDGE GEORGE C. PAINE, II |
| SPENCER TALBOTT, | ) |
| RHONDA TALBOT, AND | ) |
| TALBOTT TITLE LLC | ) |
|     Defendant. | ) |
| | ) ADV. _____ |

## ADVERSARY COMPLAINT

Comes now John and Connie McCaslin, by and through counsel, and hereby makes their complaint under 11 U.S.C. § 523(a) against the Debtor and Defendants as follows:

1. Jurisdiction to entertain this proceeding is conferred upon this Court by 28 U.S.C. § 151 and § 157(b);

2. Venue to entertain this proceeding is properly laid with this Court pursuant to 28 U.S.C. § 1408 and § 1409(a);

3. This case relates to the bankruptcy of In re: Van E. Christian, Case No. 10-09108;

4. This is a core proceeding;

5. Pursuant to 11 U.S.C. § 105(a), this Court may issue any order, process or judgment necessary or appropriate to carry out the provisions of this title;

## FACTS AND HISTORY

6. The Plaintiffs, John and Connie McCaslin, are creditors residing at 6544 Upton Court, Nashville, Tennessee 37209;

7. The Debtor, Van Christian ("Christian") resides at 1008 Hickory Bark Circle, Nashville, Tennessee 37221;

8. Spencer Talbott ("Talbott") resides at 1541 North Marvel, Apt. #430, Los Angeles California 90046;

9. Rhonda Talbott ("Rhonda Talbott") is believed to be relative of Spencer Talbott and resides at 4644 Highway E, Houston, Missouri 65483 or 4644 Highway 63, Cabool, Missouri 65689-9044. On information and belief, Rhonda Talbott is a part-owner and/or closely involved with the operations of Talbott Title;

10. Talbott Title and Escrow LLC ("Talbott Title") is a limited liability company formed under the laws of Tennessee with a Registered Agent of Van Christian, 2212 8th Avenue South, Nashville, Tennessee 37204. Van Christian and Spencer Talbott were the sole principals and owners of Talbott Title;

11. On or about the fall of 2009 Defendants Christian and Talbott approached the Plaintiffs indicating that they were having problems reconciling the financial records of Talbott Title;

12. The Plaintiffs were asked to reconstruct certain business records to determine why the company was having cash flow and other financial problems;

13. The Plaintiff were specifically <u>not</u> requested to audit or reconcile Talbott Title's escrow account in which all real estate transactions were disbursed;

14. The reconciling of the escrow account was performed by an outside company called Escrow Pro;

15. The Defendants Christian, Talbott, and Talbott Title represented that Escrow Pro had and was continuing to reconcile the escrow account without problems;

16. Defendants Christian, Talbott, and Talbott Title affirmatively represented that all funds transferred from the escrow account to the operations account were income to Talbott Title;

17. Defendants Christian, Talbott, and Talbott Title did not disclose that they were in fact embezzling significant funds from the escrow account, or that considerable funds paid to the operations account were not actually earned income;

18. Defendants Christian, Talbott, and Talbott Title's representations that these transfers were legitimate income caused Talbott Title to appear substantially more profitable;

19. Had Defendants Christian, Talbott, and Talbott Title accurately represented the transfers to the operating account as anything other than income, Talbott Title would have been plainly insolvent;

20. In the fall of 2009, the Plaintiffs completed piecing together Talbott Title's financial records and determined that they were profitable. Cash-flow difficulties were attributed to excessive personal draws taken by Defendants from the operating account of Talbott Title. Plaintiffs' conclusions were based <u>entirely</u> on Defendant Christian and Talbott's repeated assurances that the transfers from the escrow account to the operations account were actually income[1];

21. In mid December 2009, the Defendants Christian, Talbott, and Talbott Title were presented and approved a Profit and Loss Statement for 2009. This statement included "phantom income" created by the Defendants Christian, Talbott, and Talbott Title's embezzlement from the escrow account and improper transfers to the operations account. (A copy of the P & L is attached as Exhibit A);

---

[1] At the conclusion of a real estate transaction multiple checks would be disbursed to "zero" out the account balance. Talbott Title would receive a check or checks for its services rendered. As these services varied per transaction, the amounts would differ. However, without reconciling the escrow account, there would have been no way to know if a particular check was proper or actually earned.

22. On or about December 15, 2009, the Defendants Christian, Talbott, and Talbott Title induced Plaintiffs to lend $80,000.00 to Christian and Talbott individually for the purpose of meeting Talbott Title's cash-flow problems. The December 15, 2009 Note was secured by a deed of Trust on properly located at 2212 8th Avenue South, Nashville, Tennessee 37204. (A copy of the Note is attached as Exhibit B);

23. As part of the inducement Defendants Christian and Talbott presented an October 2009 appraisal for the 8th avenue property indicating a fair market value of $600,000.00;

24. The Debtor later listed this property was having a value of $174,000.00 on Schedule D of his bankruptcy petition;

25. On or about January 18, 2010, the Defendants Christian, Talbott, and Talbott Title induced Plaintiffs to lend an additional $35,000.00 to Christian and Talbott individually for the purpose of meeting Talbott Title's cash-flow and payroll tax problems. The January 18, 2010 Note was secured by a deed of Trust on properly located at 2212 8th Avenue South, Nashville, Tennessee 37204. (A copy of the Note is attached as Exhibit C);

26. During the months of December and January the Defendants Christian, Talbott, and Talbott Title continued misrepresenting that the transfer of funds from the escrow account were income to Talbott Title;

27. On or about February 10, 2010, Christian and Talbott advised the Plaintiffs that Talbott Title was having "escrow problems" and claimed to have a "shortage" of $89,024.80;

28. On or about February 16, 2010, Rhonda Talbott agreed to lend $89,025.00 to one or more of the Defendants. The $89,025.00 was deposited to the escrow account. On February 22, 2010, this amount was suspiciously transferred out of the escrow account for unknown reasons;

29. On information and belief, Rhonda Talbott made previous transfers to the company to enable Defendant Christian and Talbotts continuing fraud;

30. On February 24, 2010, deposited $77,025.00 to Talbott Title's operating account;

31. On or about March 9, 2010 the Defendants Christian, Talbott, and Talbott Title first disclosed there was a problem with funds being taken from the escrow account which was entered as income in 2009; and,

32. In May 2010, Defendants Christian & Talbott closed down Talbott Title.

**PLAINTIFF'S CAUSES OF ACTION**

**COUNT I**
**NON-DISCHARGEABILITY FOR FRAUD UNDER 11 U.S.C. § 523(A)(2), 523(A)(4), AND 523(A)(6)**

33. Paragraph 1 – 32 are incorporated herein as if restated verbatim;

34. The Defendants acted together to misrepresent to the Plaintiffs that the transfers from the escrow account to the operating account were in fact income to Talbott Title. The Defendants' asserts, both orally and in writing, intentionally creating the false impression that Talbott Title was financially sound. This deception was aided and abetted by Defendant Rhonda Talbott who knew, or should have known, of the illegal acts of Christian and Talbott. It is asserted that Rhonda Talbott provided operation resources to Talbot Title which further created the false impression of financial stability.

35. The Defendants Christian and Talbott further proffered the grossly excessive appraisal on the 2212 8th Avenue South property which they knew, or should have known, was at least three (3) times the actual fair market value of the same. The Defendant Rhonda Talbott is believed to have known, or should have know with the exercise of reasonable diligence, that

Christian, Talbott, and Talbott Title were financially unsound at they time they were procuring outside financing.

36. Based on the above facts and law the Plaintiffs are entitled to have the debtor's obligation to them declared non-dischargeable.

## COUNT II
## CIVIL CONSPIRACY

37. Paragraph 1 – 36 are incorporated herein as if restated verbatim;

38. In Tennessee, civil conspiracy has long been defined as a "combination between two or more persons to accomplish by concert an unlawful purpose, or a lawful purpose not in itself unlawful by unlawful means." *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 90, 208 S.W. 2d 344, 353 (1948). The requisite elements of the cause of action are common design, concert of action and an overt act. Injury to person or property, resulting in attendant damage must also exist. *Koehler v. Cummings*, 380 F. Supp. 1294., 1313 (M.D. Tenn. 1974);

39. The facts and allegations in this complaint show that the Defendants acted together as an association of individuals acting in their own selfish interests. The Defendants conspired to engage in some or all of the following acts, violating Tennessee law as outlined herein:

        a) Breach of Contract;
        b) Breach of fiduciary duties;
        c) Fraud; and,
        d) Conversion;

40. The Plaintiffs were greatly harmed by the Defendants' actions in misrepresenting Talbot Title's financial condition and the Plaintiffs are entitled to a judgment for compensatory and punitive damages;

# COUNT III
# BREACH OF FIDUCIARY DUTIES

41. Plaintiff adopts paragraphs 37 to 40 as if restated verbatim;

42. Tenn. Code Ann. § 48-18-301 governs Director's fiduciary duties, and states in part as follows;

> (a) A director shall discharge all duties as a director, including duties as a member of a committee;
> (1) In good faith;
> (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
> (3) In a manner the director reasonable believes to be in the best interests of the corporation.
> (b) In discharging such duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by;
> (1) One (1) or more officers or employees of the corporation (or a subsidiary of the corporation) whom the director reasonably believes to be reliable and competent in the matters presented;
> (2) legal counsel, public accountants, or other persons as to matters the director reasonably believes are within the person's professional or expert competence; or
> (3) A committee of the board of directors of which the director is not a member, if the director reasonably believes the committee merits confidence.
> (c) A director is not acting in good faith if the director has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (b) unwarranted.
> (d) A director is not liable for any action taken as a director, or any failure to take action if the director performed the duties of the office in compliance with this section;

*43.* Tennessee law is well-settled on the general principal that one who is an officer, director, and controlling stockholder owes a fiduciary duty to other stockholders and must act in good faith and remain loyal to the corporation and its shareholders. *Fausek v. White*, 965 F.2d 126(1992);

44. As a fiduciary, a corporate officer or director has a strong influence on how a corporation conducts its affairs, and a correspondingly strong duty not to conduct those affairs to unfair detriment of others, such as minority shareholders or creditors who also have legitimate

7

interests in the corporation but lack power of fiduciary. *Interherm Inc. v. Olympic Homes Systems, Inc.,* 569 S.W. 2d 467 (1978);

45.  Officers and directors who are found to be liable for a collective breach of fiduciary duty, negligence or breach of contract are jointly and severally liable, not proportionally liable. *Resolution Trust Corp. v. Block,* 924 S.W. 2d 354 (1996);

46.  Liability of directors and other officers of a corporation is not limited to willful breaches of trust or excessive power, but also extends to negligence. *Neese v. Brown* 405 S.W. 2d 577 (1964);

47.  The Plaintiffs were greatly harmed by the Defendants' breach of the contract (Notes) caused by their misrepresenting Talbot Title's financial condition and the Plaintiffs are entitled to a judgment for compensatory and punitive damages;

## COUNT IV
## FRAUD AND PROMISSORY FRAUD

48.  Plaintiff adopts paragraphs 41 to 47 as if restated verbatim;

49.  A plaintiff must allege the following elements to assert a common law fraud claim: "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, ... (3) an injury caused by reasonable reliance on the representation [and (4) the requirement] that the misrepresentation involve a past or existing fact...." *Dobbs v. Guenther,* 846 S.W.2d 270, 274 (Tenn.Ct.App.1992). "A claim of fraud is deficient if the complaint fails to state with particularity an intentional misrepresentation of a material fact." *Hermosa. v. Mid-Tennessee Bone, P.C.,* No. M2008-00597-COA-R3-CV, 2009 WL 711125, at *10 (Tenn.Ct.App. Mar. 16, 2009);

50.  In order to prove promissory fraud, a plaintiff must prove (1) a promise of future conduct, (2) that was material, (3) made with the intent not to perform, (4) that plaintiff reasonably relied upon (5) to plaintiff's injury. *See Happy Goodman Family,* 575 S.W.2d at 499;

51. As proven by all the facts set forth hereinabove, Defendants Christian, Talbott, Rhoda Talbott and Talbott Title have committed acts of fraud and promissory fraud against Plaintiffs;

52. Plaintiffs have been damaged and are entitled to a judgment for compensatory and punitive damages;

## COUNT V
## CONVERSION

53. Plaintiff adopts paragraphs 48 to 52 as if restated verbatim;

54. Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. *Barger v. Webb*, 216 Tenn. 275, 278, 391 S.W.2d 664, 665 (1965); *Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 211 (Tenn.Ct.App.1988). Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Kinnard v. Shoney's, Inc.*, 100 F.Supp.2d 781, 797 (M.D.Tenn.2000);

*55.* Property may be converted in three ways. First, a person may personally dispossess another of tangible personalty. *Restatement (Second) of Torts* § 223(a) (1965). Second, a person may dispossess another of tangible property through the active use of an agent. See, e.g., *McCall v. Owens*, 820 S.W.2d 748, 751 (Tenn.Ct.App.1991); 1 *Stuart M. Speiser et al., The American Law of Torts* § 3.4 (1983) ("The American Law of Torts") (stating that "those who ratify and adopt acts of a wrongdoer done for their benefit" may be liable). Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for "receiving a chattel." *Restatement (Second) of Torts* § 223(d);

56. Two or more persons may be held jointly and severally liable for damages in tort when they intentionally unite in the wrongful act causing the injury. *Hale v. Knoxville*, 189 Tenn. 491, 502, 226 S.W.2d 265, 269 (1949). Joint and several liability may be imposed on all (1) who

9
Case 3:10-bk-09108 Doc 68 Filed 01/27/11 Entered 01/27/11 18:32:49 Desc Main
Document Page 9 of 11

actively participate in the tortious acts, (2) who intentionally aid the acts, or (3) who ratify and adopt tortious acts done for their benefit. *Hux v. Butler*, 339 F.2d 696, 699 (6th Cir.1964); 1 The American Law of Torts § 3.4. In appropriate circumstances, joint and several liability is appropriate for conversion claims. *Breeden v. Elliott Bros.*, 173 Tenn. 382, 386-87, 118 S.W.2d 219, 220 (1938);

57. By conspiring to make false representations to the Plaintiffs to create the false impression that Talbott Title was financially sound the Defendants converted Plaintiffs' property by fraud;

58. Plaintiffs have been damaged and are entitled to a judgment for compensatory and punitive damages;

Therefore, the Plaintiff prays for the following:

1. That an order be entered declaring the December 15, 2009 Note a non-dischargeable debt as to the Debtor Van Christian;

2. That an order be entered declaring the January 18, 2010 Note a non-dischargeable debt as to the Debtor Van Christian;

3. That an order be entered find the Defendants Christian and Talbott breached their contract with the Plaintiffs;

4. That an order be entered find the Defendants Christian, Talbott and Rhonda Talbot engaged in a civil conspiracy against the Plaintiffs;

5. That an order be entered find the Defendants Christian and Talbott breached their fiduciary duties to the Plaintiffs;

6. That an order be entered find the Defendants Christian and Talbott engaged in fraud and promissory fraud against the Plaintiffs;

7. That an order be entered find the Defendants Christian and Talbott engaged in conversion of Plaintiffs' property by fraud;

8. That an order be entered for the December 15, 2009 and January 18, 2010 Notes in the principal amount of $108,604.00, plus interest in the amount of $5,262.00, from this date and through the date of judgment:

9. That an order be entered for the granting a judgment for the above in the amount of $113,866.00, plus accrued interest;

10. For an award of reasonable attorneys fees and costs; and,

11. For further and other general relief to which Plaintiff may be entitled.

Respectfully Submitted,


_____/s/ James Roberts_____.
James D. R. Roberts, Reg. No. 017537
Janet L. Layman, Reg. No. 021569
ROBERTS & LAYMAN
1700 Hayes Street, Suite 303
Nashville, Tennessee 37203
(615) 242-2002 office
(615) 242-2042 facsimile
Attorney for John & Connie McCaslin
Jim.Roberts@RobertsandLayman.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent electronically to the attorney for the debtor(s)'s attorney, David F. Cannon, Esq., 346 21st Avenue North, Nashville, TN 37203, and Trustee, Eva M. Lemeh, 4300 Kings Lane, Suite 400, Nashville, TN 37218 and the U.S. Trustee, at 318 Customs House, 701 Broadway, Nashville, TN 37203 on this the 27th day of January, 2011.

_____/s/ James Roberts_____.
James D. R. Roberts / Janet L. Layman